| | | |
|---|---|---|
| Kayla Smith | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Case No.: 1:24-cv-00428 |
| CAMDEN DEVELOPMENT INC., et al. | : | |
|     Defendants. | : | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS

**COMES NOW** Plaintiff, Kayla Smith (hereinafter "Ms. Smith"), by and through counsel, hereby submits this memorandum in support of her opposition to Defendant Camden Development Inc.'s ("Camden") Motion to Dismiss or in Alternative Motion for Summary Judgment.

## RELEVANT FACTUAL BACKGROUND

Camden is a multi-state residential apartments manager and owner property ownership, maintenance, and management, whose workforce totals an approximate 1,600 employees, according to its website. Ms. Smith was hired by Camden as a leasing consultant during her final semester at Townson University as her first full-time job. Ms. Smith worked as a leasing consultant at two different Camden properties in Washington DC.

As part of her new-hire orientation, Camden assigned Ms. Smith to watch videos that promoted hugging as the Employer's workplace culture. The videos prominently show women hugging women and women hugging men, with no scenes of men hugging each other. The videos made no reference to consent, limitations on how to hug, the circumstances that could

Page 1 of 14
Smith v. Camden, et al.      1:24-cv-00428
Plaintiff's Opposition to Def.'s Motion to Dismiss

make touching workers in this manner inappropriate, harassing conduct, or sexual assault. Moreover, the videos do not inform the viewer that she has the agency or authority to refuse any form of touching, including hugging.

Because of this assigned video promoting workplace touching without consent, Ms. Smith felt compelled to hug staff at work, including managers, often when she did not wish to be touched. To be seen as a team player and to grow professionally, Ms. Smith submitted to this workplace culture.

On March 10, 2023, a non-direct manager was alone in a room with Ms. Smith and asked for a hug. Feeling compelled by the hugging policy and workplace culture, Ms. Smith complied. The manager thereafter sexually assaulted Ms. Smith for over 20 minutes.

Ms. Smith has suffered severe emotional damages because of this sexual assault. Consequently, Ms. Smith took immediate medical leave to recover, and thereafter terminated her employment with Employer. Ms. Smith now asks this Court to enter a judgment confirming that the Camden will be held accountable for its abusive policy which led to its agent sexually assaulting Ms. Smith on the job. Plaintiff's Complaint, ¶¶9-78.

## PROCEDURAL HISTORY

On April 5, 2023, Ms. Smith filed a Charge of Discrimination with the EEOC. On November 13, 2023, Ms. Smith received a letter notifying her of her Right to Sue from the EEOC. Ms. Smith filed her complaint with this Court on February 13, 2024, against both Camden Development Inc., and Jose Mancilla. Ms. Smith duly served Mr. Mancilla on February 18, 2024. Mr. Mancilla has yet to make his appearance in this matter. Ms. Smith served Camden on February 27, 2024. Camden filed its preliminary motion to dismiss on March 19, 2024.

## LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. See Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979), aff'd on reh'g, 628 F.2d 199 (D.C. Cir. 1980) (internal quotations omitted) ("The complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.").

A complaint needs only to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss under Rule 12(b)(6). (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While a plaintiff needs to show "more than a sheer possibility that a defendant has acted unlawfully," a plaintiff is not required to meet a "probability requirement" to survive a motion to dismiss. *Id*.

Thus, the Defendants must prove that that Plaintiff's complaint does not allow this Court to "draw the reasonable inference that the [Defendants are] liable for the misconduct" for dismissal to be appropriate. *Id*. This Court should not determine "whether [Plaintiff] will ultimately prevail" at this stage but should only consider "whether [Plaintiff] is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 511 (2002).

## LEGAL ARGUMENT

### I. Camden Lacks Standing to Assert a Defense for its Co-Defendant (Count IV).

As an initial matter, Camden lacks the standing to move this Court to dismiss a claim against Mr. Mancilla in his individual capacity. Camden argues that "the Court must dismiss Count IV, Sexual Harassment under the D.C. Human Rights Act against Mr. Mancilla because

Mr. Mancilla lacked supervisory authority."[1] Defendant's Motion to Dismiss, at 8.[2] However, Mr. Mancilla is listed as an individual defendant, who has not submitted an answer, a preliminary motion, or any appearance whatsoever in this matter. Camden has cited no authority that allows it to assert any defense for a co-defendant, and thus should be barred from doing so.

"The doctrine of prudential standing sets forth three broad principles including: the prohibition of allowing parties to raise the rights of a third-party." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S.Ct. 1377, 1386, 188 L.Ed.2d 392 (2014); See also, *In re Shelton Fed. Grp., LLC*, No. 15-00623, 2018 WL 4468331, at *2 (Bankr. D.D.C. Aug. 21, 2018) (holding that a co-defendant was not "asserting its own right to proper service and accordingly is seeking third-party standing" and the co-defendant had "not presented any reason why the court should grant an exception to the general rule prohibiting third-party standing.").

To the extent that Camden is only asserting that *it* should not be liable for sexual harassment under the DC Human Rights Act ("DCHRA"), I point the Court's attention to infra Section III. a) which lays out that the newly amened DCHRA does not require supervisory authority – but totality of circumstances – to hold the employer liable for sexual harassment. Therefore, Ms. Smith can properly bring claims against both defendants for violations of the DCHRA (Count IV). Accordingly, the Court should deny Camden's motion on this ground.

---

[1] Plaintiff's complaint mistakenly omits "IV" from this Count. However, Defendant's Motion to Dismiss properly refers to the count as Count IV.
[2] Defendant's memorandum is filed as a separate document, beginning on page 4. Therefore page 8 is the fifth consecutive page of the document.

Page 4 of 14
Smith v. Camden, et al.    1:24-cv-00428
Plaintiff's Opposition to Def.'s Motion to Dismiss

## II. D.C.'s Worker's Compensation Law Does Not Cover Injuries Resulting from Sexual Harassment Because "Sexual Harassment is Not a Risk Involved in or Incidental to Employment."

Generally, the Workers Compensation Act ("WCA") provides compensation for "[t]he injury or death an employee that occurs in the District of Columbia if the employee performed work for the employer, at the time of the injury or death, while in the District of Columbia." D.C. Code § 32-1503(a)(1). The WCA is an "employee's exclusive remedy against the employer ... for any illness, injury, or death arising out of and in the course of his employment." Id. § 32-1504(b). In D.C., "[a]n injury arises out of and in the course of employment when it occurs in the course of the employment and as the result of a risk involved in or incidental to the employment or to the conditions under which it is required to be performed." *Wright v. D.C. Dep't of Emp. Servs.*, 924 A.2d 284, 287 (D.C. 2007) (internal quotation marks omitted).

However, as it relates to the WCA, this jurisdiction has long "conclude[d] as a matter of law that sexual harassment is not a risk involved in or incidental to employment." *Est. of Underwood v. Nat'l Credit Union Admin.*, 665 A.2d 621, 634 (D.C. 1995)(internal quotes removed). The reason that injuries related to sexual harassment are excluded from WCA's coverage arises out of respect to the Human Rights Act. "Limitation of claims for emotional distress from sexual harassment to an administrative remedy under the WCA would frustrate implementation of the Human Rights Act." *Id*. Thus, since the plaintiff's claim for emotional distress was "premised on the same events that underl[ay] her Human Rights Act claim for sexual harassment," her alleged injuries did not "arise out of" the employment and so fell "outside the WCA definition of disabling injuries," leaving her free to pursue the common law claim in court. *Id.*, at 630, 635.

Page 5 of 14
Smith v. Camden, et al.   1:24-cv-00428
Plaintiff's Opposition to Def.'s Motion to Dismiss

Here, Ms. Smith explicitly and unequivocally claimed sexual harassment. Her sexual harassment allegations involve some of the vilest acts against another human being – non-consenting sexual touching. Moreover, Ms. Smith claimed that the very hugging policy itself is sexually harassing. Her emotional distress is not subject to the WCA, as explained in *Est. of Underwood*. Defendant's contention that "[i]t is indisputable that Ms. Smith's alleged injuries arose out of and in the course of her employment" could not be further from an accurate reflection of jurisprudence in this matter. Def. Mot. to Dismiss, at 10.

Because her injuries were "premised on the same events that underlay her Human Rights Act claim for sexual harassment," it is by law "outside the WCA definition of disabling injuries." *Est. of Underwood*, at 630, 635. Defendant's motion effectively argues that the WCA preempts, or otherwise infringes on the statutory authority of the Human Rights Act – without so much as a mention of the Human Rights Act. This Court must not be swayed by this misinterpretation of the law. Accordingly, Ms. Smith properly pled Counts V, VI (negligence and battery); and the Defendant's motion must be denied on these grounds.

### III. Ms. Smith Sufficiently Pled Sexual Harassment Under Both the D.C. Human Rights Act and Title VII of the 1964 Civil Rights Act (Counts I-IV).

a) *All Sexual Harassment Counts Related to the Sexual Assault by Mr. Mancilla are Sufficiently and Properly Pled to Hold Both Defendants Liable for the Sexual Assault.*

The District of Columbia passed the Human Rights Enhancement Act, which took effect September 2022. The new DCHREA amended the DC Human Rights Act in several sections. Relevant in this instant action, the new law defines harassment and sexual harassment as follows:

Page 6 of 14
Smith v. Camden, et al.  1:24-cv-00428
Plaintiff's Opposition to Def.'s Motion to Dismiss

    (A) "Harassment" means conduct, whether direct or indirect, verbal or nonverbal, that unreasonably alters an individual's terms, conditions, or privileges of employment or has the purpose or effect of creating an intimidating, hostile, or offensive work environment.
    (B) "Sexual harassment" means:
    (i) Any conduct of a sexual nature that constitutes harassment as defined in subparagraph (A) of this paragraph; and
    (ii) Sexual advances, requests for sexual favors, or other conduct of a sexual nature where submission to the conduct is made either explicitly or implicitly a term or condition of employment or where submission to or rejection of the conduct is used as the basis for an employment decision affecting the individual's employment.

D.C. Code Ann. § 2-1402.11 (West). Most importantly, the DCHREA also provided a new "totality of circumstances" test in determining whether conduct constituted unlawful harassment. By considering the totality of the circumstance,

    The finder of fact shall consider the following factors; except, that this list shall not be considered exhaustive, and the presence or absence of any single factor shall not be determinative:
    (A) The frequency of the conduct;
    (B) The duration of the conduct;
    (C) The location where the conduct occurred;
    (D) Whether the conduct involved threats, slurs, epithets, stereotypes, or humiliating or degrading conduct; and
    **(E) Whether any party to the conduct held a position of formal authority over or informal power relative to another party.**

*Id*. (emphasis added). The amended DCHRA does not require Mr. Mancilla to be Ms. Smith's direct supervisor, or hold any position of informal authority over her, for either defendant to be held liable for sexual harassment. This is so despite much of Camden's argument resting on Mr. Mancilla's lack of supervisory authority over Ms. Smith. As referenced in Section I, Ms. Smith can bring claims against both defendants for violations of the DCHRA. The very text of the law envisions both defendants as parties to this suit. Therefore, Camden has stated no legal justification to excuse itself from this suit.

Page 7 of 14
Smith v. Camden, et al.      1:24-cv-00428
Plaintiff's Opposition to Def.'s Motion to Dismiss

### b) All Counts Related to the Sexually Harassing Hugging Policy are Sufficiently and Properly Pled to Hold Camden Liable for Sexual Harassment.

"To make a prima facie Title VII hostile environment claim, the plaintiff employee must show: (1) the employee was a member of a protected class; (2) the employee was subjected to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment; and (5) the existence of respondeat superior liability." *Davis v. Coastal Int'l Sec., Inc.*, 275 F.3d 1119, 1122–23 (D.C. Cir. 2002) (internal quotation marks and citation omitted). Additionally, Discrimination can also occur when a facially-neutral policy unfairly affects ("impacts") one or more employees, because of race, color, creed, national origin, sex or age. *Burford v. Yellen*, 246 F. Supp. 3d 161, 173 (D.D.C. 2017).

The Defendant's hugging policy is the most element of Ms. Smith's complaint. But for its existence, neither Ms. Smith, nor many similarly situated women would feel compelled to hug an older male coworker in an empty apartment. Legally, the hugging policy binds Camden to liability for any harm done to its employees under the policy – which is the case in this current action.

Though the complaint details the hugging policy and hugging culture at length, Camden only briefly addresses the policy in closing. Camden summarily argues that Ms. Smith 1)"does not allege conduct of a sexual nature or facts from which it could be inferred that one sex was disadvantaged in the terms and conditions of employment …"; and 2) "does not allege that Camden was aware that she was offended … and failed to take immediate remedial action." Def. Mot. to Dismiss, at 11. Both arguments fail for the following reasons.

First, Ms. Smith averred that Camden's conduct both disadvantage women in the workplace, in fact, and by inference. Specifically, in describing the hugging video, Ms. Smith averred that "[e]ach scene depicting a hug featured either women hugging women or women hugging men, with a female narrator gleefully describing Camden's hugging culture. No scene in the video feature men hugging other men." Compl., at ¶24. Such a video is not facially neutral as the Defendant's argument assumes, because it specifically targets women. Even if this Court believes that the hugging video is facially neutral, the clear undertone is that its female workers are expected to conform to this "hugging culture" whether they are hugging each other or hugging their male coworkers or superiors. Ms. Smith continued on to state that because Camden specifically targeted women in the hugging policy video, it "implicitly demands that women submit to hugs as a term and condition of work." *Id*., at ¶85. If the fact that the hugging video targeting women is not apparent to the Court on its face, Ms. Smith is certainly entitled to this Court's drawing of a "reasonable inference" that the hugging video disadvantages women. *Ashcroft*, at 678.

Secondly, Camden confuses the legal test for sexual harassment in arguing that Ms. Smith did not allege that Camden both a) knew that she was offended by the hugging video; and b) failed to take immediate remedial action. The test that the plaintiff must first report the harassing conduct and allow the employer to act is only the test for holding the employer vicariously liable for a coworker's unlawful harassment.

Where a coworker engages in harassment, the employer is liable only "if the employer was negligent with respect to the offensive behavior." *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013). Under controlling D.C. Circuit precedent, this means that "[a]n employer may be held liable for the harassment of one employee by a fellow employee (a non-supervisor) if the

Page 9 of 14
Smith v. Camden, et al.  1:24-cv-00428
Plaintiff's Opposition to Def.'s Motion to Dismiss

employer knew or should have known of the harassment and failed to implement prompt and appropriate corrective action." *Curry v. District of Columbia*, 195 F.3d 654, 660 (D.C. Cir. 1999). But "where the harassing employee is the plaintiff's supervisor," "an employer may be vicariously liable for its employees' creation of a hostile work environment." Vance, 570 U.S. at 428.

It is uncontested that Camden knew about its hugging video that it required Ms. Smith to watch. The complaint stated the existence of Camden's hugging policy and that Camden required Ms. Smith to watch a video of the hugging policy during her orientation. Compl., at ¶¶ 21-30; Def.'s Mot. to Dismiss, at 11 (Defendant referred to the hugging video as an "orientation video"). However, Camden attempts now to use the so-called Faragher-Ellerth defense, which applies primarily to vicarious liability of an employee. See, *Curry*. It was not Ms. Smith's coworker who required her to watch the hugging video; it was Camden. To the extent that the requirement was ordered by any one individual, it would be someone with supervisory authority, which would still implicate Camden under *Vance*. In this instant matter, Ms. Smith alleged that the sexually harassing hugging policy was Camden's, not Mr. Mancilla. Therefore, there is not requirement under Title VII that Ms. Smith raise an objection or complaint to the employer about the employer's own harassing policy to hold the employer to account for its harassing policy. Similarly, Title VII does not require Ms. Smith to allow Camden to cure its harassing policy before bringing a harassment claim.

Lastly, Camden's heading, to which this section is responsive, states that "[t]here is no basis for imputing liability for sexual harassment on Camden under Counts I-IV[,]" however, it does not attempt to argue why there is no basis for liability under the DCHRA, which is listed under Counts II and IV. Consequently, the Court must deny the Motion to Dismiss as it relates

Page 10 of 14
Smith v. Camden, et al.            1:24-cv-00428
Plaintiff's Opposition to Def.'s Motion to Dismiss

to the DCHRA under Counts II and IV. Furthermore, for the foregoing reasons, the Court must deny Camden's Motion to Dismiss the remaining Counts I and III.

## IV. Camden Has Failed to Meet its Summary Judgment Burden.

"District courts may refer to materials outside the pleadings in resolving a 12(b)(6) motion. But when they do, they must also convert the motion to dismiss into one for summary judgment." *Kim v. United States,* 632 F.3d 713, 719 (D.C.Cir.2011) (quoting Federal Rules of Civil Procedure 12(d). The motion must be treated by the rule governing summary judgment: FRCP 56. *Id.*

Under FRCP 56, summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895–96 (D.C.Cir.2006). A fact is "material" if it is capable of affecting the outcome of the litigation. *Holcomb*, 433 F.3d at 895; *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505; *Holcomb*, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record ...." Fed. R. Civ. P. 56(c)(1)(A).

Camden has failed – in every way – to meet its burden for summary judgment. Although its motion is partially titled "Motion for Summary Judgment" as the alternative to the Motion to Dismiss component, it puts forth no effort in arguing that there is no genuine dispute of material fact. In fact, it fails to identify any fact not in dispute, how that fact is material, or whether the

Page 11 of 14
Smith v. Camden, et al.　　　　1:24-cv-00428
Plaintiff's Opposition to Def.'s Motion to Dismiss

dispute is genuine. It merely attaches a declaration cited once in the "factual background" of its motion. It fails to even cite the evidentiary standard for summary judgment. Consequently, Ms. Smith is left to imagine what, if anything, Camden considers not to be a genuine dispute of material fact. Assuming, *arguendo*, that it contends it should be awarded summary judgment on the issue of Mr. Mancilla's lack of supervisory authority, that argument has been addressed in this opposition.

Moreover, the summary judgment, such that it is, violates every procedural requirement by this Court. In addition to failing to cite any authority on summary judgment, it fails to argue summary judgment; and it has no statement of material fact to which it contends there is no genuine issue. DDC Local Rules LCvR 7 (h)(1). Defendant even failed to distinguish whether the motion in its entirety should be treated as a summary judgment or only certain arguments applicable to its Exhibit A declaration. Camden successfully converted its motion to a summary judgment by attaching its declaration; however, its argument is woefully insufficient to support a reasonable ruling in its favor.

Accordingly, by rule, this Court must convert the Defendant's Motion to Dismiss to a Motion for Summary Judgment. However, since the Defendant failed to meet its summary judgment burden, this Court must also deny the motion in its entirety.

## Conclusion

For the foregoing reasons, the Defendant's Motion to Dismiss or in Alternative Motion for Summary Judgment should be denied in full.

                                       Respectfully Submitted,

                                       */s/ Robert Baldwin III*
                                       Robert Baldwin III, Esq.

Bar No. 90002020
Virtue Law
1250 Connecticut Ave, Suite 700
Washington D.C., NW 20036
T: (301) 821-6407
Robert@virtuelawgroup.com
*Counsel for Plaintiff*

Page 13 of 14
Smith v. Camden, et al.                    1:24-cv-00428
Plaintiff's Opposition to Def.'s Motion to Dismiss

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2nd day of April 2024, a copy of the foregoing Opposition to the Defendant's Motion to Dismiss was served via electronic mail upon the following:

Alison N. Davis

Littler Mendelson, P.C.

815 Connecticut Avenue, NW

Suite 400

Washington DC 20006

*Counsel for the Defendant*

Respectfully Submitted,

_____
Robert Baldwin III, Esq.
Bar No. 90002020
Virtue Law
1250 Connecticut Ave, Suite 700
Washington D.C., NW 20036
T: (301) 821-6407
Robert@virtuelawgroup.com
*Counsel for Plaintiff*

Page 14 of 14
Smith v. Camden, et al.    1:24-cv-00428
Plaintiff's Opposition to Def.'s Motion to Dismiss