```
 1            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
 2                          ---

 3
     KAYLA SMITH,                    )
 4                                   )
                                     )
 5           Plaintiff,              )  CIVIL NO. 24-428
                                     )
 6   v.                              )  Monday,
                                     )  December 16, 2024
 7   CAMDEN DEVELOPMENT, INC., et )
     al.,                             )
 8

 9           Defendant.
     _____
10
                      TRANSCRIPT OF ORAL RULING
11
              BEFORE THE HONORABLE TIMOTHY J. KELLY
12                 UNITED STATES DISTRICT JUDGE

13                          ---

14   APPEARANCES:         VIRTUE LAW GROUP
                          BY:  ROBERT BALDWIN, III
15                        1250 Connecticut Avenue, Suite 700
                          Washington, DC 20006
16                        (916)779-9215
                          Email: Robert@virtuelawgroup.com
17
                          For the Plaintiff
18
                          LITTLER MENDELSON, P.C.
19                        BY:  ALISON DAVIS
                               ALEXIS BOSILOVIC
20                        815 Connecticut Avenue, NW, Suite 400
                          Washington, DC 20006
21                        (202)842-3400
                          Email: Andavis@littler.com
22
                          For the Defendant
23                          ---

24   COURT REPORTER:     CHANDRA R. KEAN, RMR
                         Official Court Reporter
25                       333 Constitution Avenue, NW
                         Washington, DC 20001
```

**PROCEEDINGS**

2    (Court called to order at 9:06 a.m.)

09:06:35    3    DEPUTY COURTROOM CLERK:  We are on the record

09:06:36    4    in civil matter 24-428, Kayla Smith vs. Camden

09:06:42    5    Development Incorporated, et al.

09:06:43    6    Present for the plaintiff is Robert Baldwin.  The

09:06:47    7    plaintiff, Ms. Smith, is also present.  And present for

09:06:48    8    the defendants are Alison Davis and Alexis Bosilovic.

09:06:53    9    THE COURT:  All right.  Good morning to

09:06:55    10   everyone.

09:06:56    11   In an effort to try to move things along sooner

09:07:06    12   rather than later, instead of polishing up an opinion, I

09:07:10    13   thought it would be helpful simply to just deliver an

09:07:13    14   oral ruling.

09:07:14    15   So I appreciate everyone, especially in this busy

09:07:17    16   week, making time to be present.  So without further ado

09:07:30    17   on Camden's partial motion to dismiss, which is on the

09:07:33    18   docket at ECF No. 6...

09:07:35    19   Any questions before I begin from either side?

09:07:38    20   From the plaintiff?

09:07:39    21   MR. BALDWIN:  Yes, Your Honor.  Just making a

09:07:43    22   small correction.  This is Robert Baldwin, III, on

09:07:46    23   behalf of Kayla Smith.

09:07:48    24   THE COURT:  What was the correction?

09:07:50    25   MR. BALDWIN:  The inclusion of the suffix, Your

09:07:53  1      Honor.

09:07:53  2              THE COURT:  Okay.  I'm sorry.  Very well.  Very

09:07:57  3      well.

09:07:58  4          Anything from the defendants?

09:07:59  5          MS. DAVIS:  Nothing from the defendant.

09:08:01  6          THE COURT:  Okay.

09:08:01  7          All right.  So before me is Defendant Camden

09:08:06  8      Development's partial motion to dismiss or, in the

09:08:09  9      alternative, for summary judgment.

09:08:11  10         As I said, that's on the docket at ECF No. 6.

09:08:16  11         In her complaint, the plaintiff Kayla Smith asserts

09:08:21  12     eight statutory and common law claims relating to

09:08:25  13     alleged sex-based discrimination she suffered while

09:08:30  14     working for Camden from 2021 to 2023.

09:08:35  15         Specifically, she alleges that Camden and its

09:08:39  16     former employee, defendant Jose Mancilla, committed

09:08:44  17     common law torts and violated both Title 7 of the Civil

09:08:50  18     Rights Act of 1964 and the D.C. Human Rights Act.

09:08:54  19         Camden moves to dismiss six of those eight counts

09:09:01  20     for failure to state a claim under Rule 12(b)(6), so for

09:09:06  21     the following reasons, I'm going to grant in part and

09:09:09  22     deny in part Camden's motion.

09:09:11  23         So first let me lay out the legal standard -- the

09:09:17  24     familiar legal standard.

09:09:19  25         To survive a Rule 12(b)(6) motion to dismiss, a

09:09:23  1    plaintiff must plead "enough facts to state a claim to

09:09:27  2    relief that is plausible on its face and to nudge her

09:09:31  3    claims across the line from conceivable to plausible."

09:09:35  4        That's *Abbas v. Foreign Policy LLC*, 783 F.3d 1328

09:09:46  5    at 1338, a D.C. Circuit case from 2015.

09:09:51  6        To meet this standard, a plaintiff must plead

09:09:55  7    "factual content that allows the Court to draw the

09:10:00  8    reasonable inference that the defendant is liable for

09:10:02  9    the misconduct alleged."

09:10:07  10       That's *Ashcroft v. Iqbal*, 556 U.S. 662 at 678, a

09:10:15  11   familiar Supreme Court case from 2009.

09:10:18  12       From that same case:  "Threadbare recitals of the

09:10:23  13   elements of a cause of action, supported by mere

09:10:25  14   conclusory statements, do not suffice."

09:10:33  15       So turning first then to Count 1.  In Count 1,

09:10:37  16   Smith alleges that Camden violated Title 7 when it

09:10:41  17   allegedly subjected her to its "Hug Life" policy.

09:10:48  18       Smith alleges that she is a 24-year-old Black woman

09:10:52  19   who began working for Camden, a nation-wide real estate

09:10:58  20   management company, in 2021 as a leasing consultant at

09:11:01  21   two of Camden's D.C. properties.

09:11:03  22       That's ECF No. 1, the complaint, at Paragraphs 2

09:11:08  23   and 9 through 13.

09:11:11  24       During her orientation, she was directed to watch

09:11:14  25   videos on company culture and policy.  That's

09:11:17  1    Paragraph 21.  Two of those videos specifically

09:11:23  2    addressed a Camden policy called "The Hug Life."

09:11:29  3         And those are Paragraphs 22 through 26.

09:11:33  4         Smith alleges that the first video titled "Welcome

09:11:39  5    Home!  Camden's New Hire Orientation," is narrated

09:11:46  6    mainly by women and extols the hugging culture at

09:11:51  7    Camden.  See Paragraphs 22 through 24.

09:11:54  8         The video allegedly shows clips of women hugging

09:11:56  9    men and other women -- but never men hugging men -- and

09:12:00  10   states that "you are hugging people that you normally

09:12:03  11   wouldn't hug because we hug, and we have so much fun."

09:12:10  12        That's Paragraph 23 of the complaint.

09:12:12  13        The second video titled, "The Hug Life," is

09:12:17  14   narrated by a man and carries a similar tone, claiming

09:12:21  15   that "hugging is simply a part of who we are," and that,

09:12:24  16   "now that you're a part of the Camden Family, we look

09:12:29  17   forward to hugging you too."

09:12:31  18        Those are Paragraphs 25 and 26 of the complaint.

09:12:36  19        Smith alleges that neither video references

09:12:39  20   consent, gives guidelines on appropriate hugging, or

09:12:42  21   informs employees of their right to refuse hugging.

09:12:46  22        And that's Paragraph 27 through 29.

09:12:49  23        Because of this policy, Smith allegedly "felt

09:12:53  24   compelled to hug staff at work," "often when she did not

09:12:58  25   wish to be touched."

09:13:01  1        That's Paragraph 32.

09:13:04  2        Smith alleges that Camden's "Hug Life" policy

09:13:08  3   violated Title 7 of the Civil Rights Act as it was a

09:13:13  4   sex-based policy that led "to unwelcome harassment of a

09:13:18  5   sexual nature."

09:13:20  6        That's complaint at Paragraphs 82 and 85.

09:13:26  7        Camden, on the other hand, argues that Smith has

09:13:29  8   failed to state a claim because "there is no basis for

09:13:33  9   imputing liability for sexual harassment on Camden" for

09:13:37 10   this count.

09:13:39 11        That's ECF No. 6-1 at 7.

09:13:44 12        Specifically, Camden argues that "Smith does not

09:13:49 13   allege conduct of a sexual nature or facts from which it

09:13:52 14   could be inferred that one sex was disadvantaged in the

09:13:55 15   terms and conditions of employment because of the

09:13:58 16   orientation video or the purported hugging culture."

09:14:06 17        That's ECF No. 6-1 at 8.

09:14:09 18        It further argues that Smith failed to state a

09:14:12 19   claim because she "does not allege that Camden was aware

09:14:15 20   that Smith was offended by the 'Hug Life' policy or

09:14:18 21   failed to take immediate remedial action."

09:14:24 22        So I do agree, for the reasons I'm going to lay

09:14:28 23   out, that Count 1 should be dismissed.

09:14:32 24        Regardless of whether Smith is alleging that the

09:14:35 25   "Hug Life" policy is a facially discriminatory sex-based

09:14:46  1    policy or is alleging that it constitutes sexual

09:14:48  2    harassment, the count fails for the same reason:  Smith

09:14:50  3    has not plausibly alleged that she was subjected to the

09:14:54  4    policy because of her sex.

09:14:59  5        Title 7 prohibits employers from "discriminating

09:15:04  6    against any individual with respect to terms,

09:15:07  7    conditions, or privileges of employment because of such

09:15:10  8    individual's sex."

09:15:13  9        And that's 42 United States Code,

09:15:21  10   Section 2000e-2(a)(1).

09:15:22  11       An employer therefore violates Title 7 if it would

09:15:25  12   have treated an employee differently with regard to the

09:15:29  13   terms of the employment "but for" the employee's sex.

09:15:34  14       That's *Bostock v. Clayton County*, 590 U.S. 644 at

09:15:41  15   661, the Supreme Court case from 2020.

09:15:47  16       As applied to sexual harassment and hostile work

09:15:52  17   environment claims, this element requires plaintiffs to

09:15:56  18   allege that any adverse treatment they suffered "was

09:15:57  19   based upon sex."

09:16:00  20       That's *Davis v. Coastal International Security

09:16:04  21   Inc.,* 275 F.3d 111 -- well, 1119 at 1123, a D.C. Circuit

09:16:14  22   case from 2002.

09:16:17  23       Smith's complaint fails to plausibly allege that

09:16:22  24   any of the conduct alleged in Count 1 constitutes

09:16:26  25   sex-based discrimination.  That is because Smith does

09:16:29  1    not allege sufficient facts to support her conclusory

09:16:33  2    assertion that Camden "demands that women," and not men,

09:16:40  3    "submit to hugs as a term and condition of work."

09:16:46  4         That's the complaint at Paragraph 85.

09:16:49  5         While she claims that the videos establishing the

09:16:54  6    "Hug Life" policy do so in a gendered way, her own

09:16:58  7    allegations undercut that conclusion.  She admits, for

09:17:02  8    example, that Camden's orientation video, even if it

09:17:05  9    does not happen to show any men hugging other men, still

09:17:09  10   includes videos of men hugging under the policy.

09:17:12  11        That's the complaint at 84.

09:17:14  12        Additionally, while she alleges that the first

09:17:18  13   video features "women cheerfully describing the hugging

09:17:24  14   culture at Camden," she also notes that the second

09:17:27  15   video, the one actually titled "The Hug Life," is

09:17:31  16   narrated by a man.

09:17:33  17        Again, Paragraphs 25 and 26 and 84 through 85.

09:17:37  18        And Smith makes no allegations that this second

09:17:40  19   video carried any gendered slant.  Finally, she alleges

09:17:45  20   no facts that suggest that the policy was applied in a

09:17:49  21   way that discriminated based on sex.

09:17:54  22        True, Smith does allege that there are no

09:17:56  23   depictions of men hugging men.  And this may be enough

09:18:01  24   to suggest that the "Hug Life" policy could have been a

09:18:05  25   sex-based policy, but the plaintiff must allege

09:18:09  1    sufficient facts that would "permit the court to infer

09:18:13  2    more than the mere possibility of misconduct."

09:18:17  3         That's *Iqbal* at 679.

09:18:20  4         Smith's only real factual support for her

09:18:24  5    conclusion is Camden's orientation video, which doesn't

09:18:31  6    get her very far.  I conclude that Smith has alleged, at

09:18:36  7    most, only "a sheer possibility" that Camden's "Hug

09:18:41  8    Life" policy covered women, but not men.  That is not

09:18:46  9    enough under the pleading standard.

09:18:48  10        Perhaps anticipating this result, Smith spends one

09:18:53  11   sentence in her response brief to argue that the "Hug

09:18:57  12   Life" policy violates Title 7 because it has a disparate

09:19:03  13   impact on women.

09:19:04  14        That's ECF No. 12 at 8.  But to defeat a motion to

09:19:09  15   dismiss on a disparate impact claim, a complaint must do

09:19:14  16   more than "simply allege that there is a disparate

09:19:18  17   impact on workers."

09:19:19  18        That's *Brown v. Mayorkas* No. 20-Cv-3107-TJK, 2023

09:19:28  19   Westlaw 3303862, at 11, a D.D.C. case from May 8, 2023.

09:19:38  20        It must generally include statistical evidence of

09:19:41  21   such an impact or at least indicate that the plaintiff

09:19:45  22   "will later be able to provide some sort of statistical

09:19:48  23   evidence."  Smith's complaint does neither.  It merely

09:19:53  24   asserts, without support, that "new and younger women"

09:19:56  25   are "vulnerable to inappropriate company culture."

09:20:02  1        That's the complaint at 86.  This is insufficient

09:20:05  2    to support a disparate impact claim.  And again I

09:20:10  3    repeat, she alleges no facts that suggest that the

09:20:13  4    policy was applied in a way that discriminates based on

09:20:24  5    sex.

09:20:24  6        So because Smith does not plausibly allege that any

09:20:27  7    of Camden's conduct in Count 1 was based on sex, Smith

09:20:31  8    does not plausibly suggest that Camden's policy violated

09:20:35  9    Title 7 under any theory, sexual harassment or

09:20:39  10   otherwise.

09:20:39  11       So for those reasons -- for these reasons, I will

09:20:42  12   grant Camden's motion as to Count 1.

09:20:50  13       I will also grant the motion as to Count 2, which

09:20:53  14   alleges that the "Hug Life" policy violates the D.C.

09:20:57  15   Human Rights Act, which is D.C. Code, Section 2-1401.01,

09:21:06  16   and what follows.

09:21:07  17       The D.C. Court of Appeals generally "follows cases

09:21:12  18   construing Title 7 in interpreting and applying the

09:21:16  19   provisions of the DCHRA."

09:21:23  20       That is *Estenos v. PAHO/WHO Federal Credit Union*,

09:21:32  21   952 A.2d 878, 886, a D.C. Court of Appeals case from

09:21:40  22   2008.

09:21:41  23       And the DCHRA, like Title 7, prohibits

09:21:47  24   "discriminatory practices" "based upon" certain

09:21:52  25   protected characteristics like sex.  That's D.C. Code

09:21:56   1   Section 2-1402.11(a).

09:22:02   2        As relevant here, the DCHRA prevents employers from

09:22:08   3   "discriminating against any individual with respect to

09:22:11   4   his or her" "terms, conditions, or privileges of

09:22:17   5   employment" based upon that individual's sex.

09:22:23   6        That's Section 2-1402.11(a)(1)(A).

09:22:29   7        It further prohibits "harassment based on one or

09:22:32   8   more of the DCHRA's identified protected

09:22:38   9   characteristics," such as sex.

09:22:40   10       That's the same statutory provision mentioned

09:22:44   11   before, Section 2-1402.11(c-2)(1).

09:22:54   12       Yet, for the reasons already explained, the

09:22:56   13   complaint does not allege facts to plausibly suggest

09:23:00   14   that Camden's "Hug Life" policy is a sex-based policy.

09:23:04   15   So the complaint does not allege -- successfully allege

09:23:13   16   that the policy violates either provision.

09:23:15   17       Yet, as Smith points out, the DCHRA prohibits more

09:23:20   18   than just sex-based discrimination.  It also prohibits

09:23:25   19   sexual harassment, which it defines as "any conduct of a

09:23:31   20   sexual nature that" "unreasonably alters an individual's

09:23:40   21   terms, conditions, or privileges of employment or has

09:23:42   22   the purpose or effect of creating an intimidating,

09:23:46   23   hostile, or offensive work environment."

09:23:50   24       That's D.C. Code Section 2-1402.11(c-2)(2)(A) and

           25   (B)(i).

09:24:04  1          But Count 2 fails under this theory as well.

09:24:06  2          First, it is unclear whether a policy qualifies as

09:24:09  3    "conduct."  But even if it does, Count 2 does not

09:24:15  4    plausibly allege that the "Hug Life" policy was sexual

09:24:22  5    in nature.

09:24:23  6          Although Smith concludes that the policy was

09:24:27  7    sexually degrading -- or she alleges that -- the

09:24:30  8    conclusion amounts to nothing more than a rote

09:24:34  9    recitation of that element of the cause of action.

09:24:38  10          Hugging is not inherently sexual, and a policy that

09:24:41  11    employees should hug one another, whatever its wisdom,

09:24:44  12    does not constitute inherently "conduct of a sexual

09:24:49  13    nature."

09:24:50  14          This is especially true here where the facts as

09:24:53  15    alleged indicate that Camden instituted this policy to

09:24:57  16    build workplace rapport.

09:25:00  17          This is the complaint at Paragraph 26.

09:25:05  18          This is not to say that non-sexual intent insulates

09:25:09  19    sexual conduct from liability or that sexual motivations

09:25:12  20    can hide behind what might be considered non-sexual

09:25:15  21    conduct, but the facts as alleged here do not support a

09:25:20  22    conclusion that Camden's policy blessed inherently

09:25:25  23    sexual conduct -- such as by encouraging sexually

09:25:28  24    inappropriate hugging -- or that Camden instituted the

09:25:32  25    policy based on sexual motivations.

09:25:34  1          Smith merely alleges that Camden encouraged its

09:25:38  2     employees to hug one another.  That Camden's videos

09:25:42  3     might not have expressly covered topics like consent

09:25:45  4     does not change that.  While unscrupulous employees

09:25:49  5     could use or abuse that policy for sexual purposes, that

09:25:52  6     does not make the policy itself sexual.

09:25:59  7          And I'll just include a *CF* cite here for *Boykin v.*

09:26:07  8     *District of Columbia*, 484 Atlantic 2d, 560 at 563, a

09:26:14  9     D.C. Court of Appeals case from 1984.

09:26:18  10          So for all these reasons, I will also grant

09:26:21  11     Camden's motion as to Count 2.

09:26:30  12          Next, in Count 3, Smith claims that Camden is

09:26:33  13     liable under Title 7 for an assault that Smith allegedly

09:26:38  14     suffered at the hands of her coworker, Defendant

09:26:43  15     Mancilla, who was a "non-direct manager" -- I believe a

09:26:49  16     maintenance manager -- employed by Camden.

09:26:51  17          And that's the complaint at Paragraph 35.

09:26:54  18          Smith alleges that on March 10, 2023, she was

09:26:59  19     working alone in one of Camden's leasing offices when

09:27:03  20     Mancilla asked Smith to unlock the door to a room in

09:27:06  21     which he had locked his phone.

09:27:08  22          These are Paragraphs 38 through 43 of the

09:27:12  23     complaint, and ECF No. 12 at 2.

09:27:17  24          The two then walked to the room -- into the room,

09:27:20  25     and then once inside, Mancilla allegedly asked Smith for

09:27:24  1    a hug.

09:27:25  2        Smith claims that she agreed "because of the

09:27:29  3    workplace hugging policy and culture."

09:27:32  4        That's Paragraphs 49 through 50.

09:27:36  5        Mancilla, however, allegedly refused to end the

09:27:39  6    hug, even after plaintiff Smith told him to.

09:27:43  7        That's Paragraphs 51 through 53.

09:27:47  8        He then locked the door, allegedly cornered Smith

09:27:50  9    against a wall, and began to kiss and grope her for the

09:27:53  10   next 20 minutes, despite Smith's repeated attempts to

09:27:58  11   stop him.

09:27:59  12       And this is alleged in the complaint at

09:28:02  13   Paragraphs 54 through 67.

09:28:04  14       Smith claims that Camden is liable for this

09:28:11  15   assault.  "In a Title 7 context, a plaintiff need not

09:28:15  16   plead facts establishing a prima facie case to survive a

09:28:20  17   motion to dismiss."

09:28:23  18       That's *Chien v. Sullivan*, 313 F. Supp. 3d 1, 9,

09:28:32  19   D.D.C. 2018.

09:28:33  20       But the prima facie framework is still helpful at

09:28:37  21   this motion to dismiss stage "to determine whether the

09:28:40  22   plaintiff can ever meet her initial burden to establish

09:28:42  23   a prima facie case."

09:28:46  24       To meet her prima facie burden, a plaintiff must

09:28:50  25   show five things:

09:28:51  1          One, that she was a member of a protected class.

09:28:54  2          Two, that she was sexually harassed.

09:28:57  3          Three, that the harassment was based upon sex.

09:29:01  4          Four, that the harassment created a hostile work

09:29:04  5    environment.

09:29:04  6          And five, that the employer is responsible under

09:29:08  7    respondeat superior.  That's *Bergbauer v. Mabus*, 934

09:29:14  8    F.Supp. 2d, 55, 71, a D.D.C. case from 2013.

09:29:22  9          Camden argues that Smith has failed to meet this

09:29:25  10   standard because she did not sufficiently plead the last

09:29:30  11   of those elements, that Camden is responsible for

09:29:34  12   Mancilla's actions.

09:29:35  13         That's ECF No. 6-1 at Pages 7 and 8.

09:29:40  14         Thus, Camden does not argue that Smith was not the

09:29:44  15   victim of a hostile work environment.  It focuses only

09:29:49  16   on the respondeat superior prong of the prima facie

09:29:54  17   hostile work environment claim.  That prong recognizes

09:29:57  18   that an employer may not "be held liable for the

09:30:00  19   harassment of one employee by a fellow employee, a

09:30:05  20   nonsupervisor, unless the employer knew or should have

09:30:10  21   known of the harassment and failed to implement prompt

09:30:13  22   and appropriate corrective action.

09:30:14  23         That's *Curry v. District of Columbia* 195 F.3d 654

09:30:21  24   at 660, a D.C. Circuit case from 1999.

09:30:28  25         In response, Smith focuses on Camden's

09:30:31  1    responsibility for the "Hug Life" policy.  She argues,

09:30:34  2    essentially, that she does not need to show vicarious

09:30:39  3    liability because "the sexually harassing hugging policy

09:30:42  4    was Camden's."  ECF No. 12 at 10.

09:30:46  5        And since Mancilla "used the hugging policy as an

09:30:50  6    entry point to assaulting" her -- that's the complaint

09:30:54  7    at Paragraph 99 -- Camden is legally bound "to liability

09:30:59  8    for any harm done to its employees under the policy."

09:31:05  9        That's ECF No. 12 at 8.

09:31:08  10       This argument, however, blurs the line between

09:31:11  11   Count 1 and Count 3.  While Counts 1 and 2 focus on the

09:31:17  12   "Hug Life" policy, as described previously, Counts 3 and

09:31:21  13   4, as alleged, targets Smith's "sexual harassment from a

09:31:27  14   Camden manager."

09:31:29  15       That's the complaint at Paragraphs 94 and 101.

09:31:35  16       And I've already held that Smith has not pleaded

09:31:38  17   facts sufficient to show that the "Hug Life" policy

09:31:44  18   discriminated on the basis of sex either on its face or

09:31:47  19   as it is applied.

09:31:48  20       Smith offers no authority for the proposition that

09:31:51  21   a nondiscriminatory policy, or at least one for which

09:31:57  22   there is -- are insufficient allegations that it's

09:32:03  23   discriminatory, that automatically opens up an employer

09:32:06  24   to liability under Title 7 merely because another

09:32:11  25   employee may have abused that policy for sexual ends.

```
09:32:15   1        On the contrary, this is precisely the argument the
09:32:18   2   Supreme Court rejected in cases like *Burlington*
09:32:23   3   *Industries, Incorporated v. Ellerth*, where the Court
09:32:26   4   noted that, even though company policies resulting in
09:32:30   5   "proximity and regular contact" between a would-be
09:32:34   6   abuser and his victims often facilitate inappropriate
09:32:38   7   conduct, that is insufficient on its own to trigger
09:32:42   8   Title 7 liability.
09:32:46   9        That's 524 U.S. 742, 760, a Supreme Court case from
09:32:54   10  1998.
09:32:57   11       That said, Smith's complaint does allege that
09:33:00   12  Camden should be liable for Mancilla's actions because
09:33:03   13  he was a "manager" at Camden.
09:33:07   14       That's the complaint at 94, 97, 98 paragraphs.
09:33:12   15       And the Supreme Court has held that employers are
09:33:15   16  vicariously liable for the action of "supervisors,"
09:33:20   17  subject to an affirmative defense of reasonableness.
09:33:24   18       That's *Farragher v. City of Boca Raton*, 524 U.S.
09:33:30   19  775 at 780, a Supreme Court case, again, from 1998.
09:33:42   20       But for liability to attach under this theory, the
09:33:47   21  supervisor must have acted in a way such that he
09:34:03   22  "'merges' with the employer, and his act becomes the act
09:34:08   23  of the employer."
09:34:10   24       That's the case I just mentioned, at Page 790.
09:34:16   25       Now that's easy, of course, when the supervisor is
```

09:34:19 1   an upper-echelon officer, such as the company's

09:34:22 2   president, or when the supervisor takes action firmly

09:34:27 3   within the scope of his authority, such as "hiring,

09:34:31 4   firing, promotion and the like."

09:34:34 5       That's the same case, Boca Raton case at 789

09:34:38 6   through 91.

09:34:39 7       That is because, under traditional agency

09:34:42 8   principles, an employer is generally liable for the

09:34:45 9   actions an employee takes while the employee carries out

09:34:49 10  his duties.  Again, same case at Page 793.

09:34:54 11      On the other hand, "frolics or detours from the

09:34:59 12  course of employment" -- where an employee acts "in ways

09:35:05 13  having no apparent object whatever of serving an

09:35:08 14  interest of the employer" -- do not fall within an

09:35:12 15  employee's scope of employment.

09:35:13 16      Same case, again, Pages 798 through 799.

09:35:18 17      Accordingly, employers are not automatically

09:35:22 18  vicariously liable in tort or under Title 7 for actions

09:35:29 19  employees, even supervisors, take during such frolics

09:35:36 20  and detours.

09:35:38 21      Smith obviously does not allege that assaulting

09:35:41 22  Smith was part of Mancilla's official duties.  On the

09:35:44 23  contrary, other than asserting that Mancilla was a

09:35:50 24  "non-direct maintenance manager" at one of Camden's

09:35:55 25  locations -- Paragraph 35 of the complaint -- she says

09:35:59  1    nothing about Mancilla's job responsibilities, much less

09:36:02  2    anything that could permit me to infer that assaulting

09:36:06  3    Smith in some way fell within the scope of his

09:36:09  4    employment.

09:36:12  5        See, for example, *Boykin v. The District of*

09:36:16  6    *Columbia* where the court declined to find an employer

09:36:19  7    vicariously liable for sexual assault where the assault

09:36:24  8    was not possibly related to furthering the employer's

09:36:27  9    interests, even though the employer's policy "afforded

09:36:31  10   the employee the opportunity to pursue the assault."

09:36:38  11       That's 484 Atlantic 2d at 563.

09:36:43  12       So Smith has failed to plausibly allege that Camden

09:36:47  13   should be vicariously liable for Mancilla's alleged

09:36:52  14   conduct.

09:36:52  15       For these reasons, I will also grant the motion to

09:36:55  16   dismiss Count 3.

09:37:00  17       Moving on to Count 4, Smith alleges that both

09:37:04  18   Mancilla and Camden are liable under the DCHRA for the

09:37:08  19   alleged assault.  I will dismiss this count against

09:37:14  20   Camden for the same reasons I just discussed:  Smith has

09:37:18  21   not plausibly alleged that Mancilla's conduct is fairly

09:37:23  22   attributable to Camden such that Camden itself violated

09:37:27  23   the DCHRA.  But I will deny the motion to dismiss as to

09:37:34  24   Mancilla.

09:37:36  25       It bears noting that Mancilla has not appeared in

09:37:39  1    this action and that Camden attempts to dismiss this

09:37:43  2    count on Mancilla's behalf.  That's ECF No. 6 at 1.

09:37:49  3         Smith argues that I should deny the motion because

09:37:52  4    Camden has no standing to assert this defense for

          5    Mancilla.

09:37:56  6         That's ECF No. 12 at Pages 3 through 4.

09:38:01  7         Camden maintains, however, that I can still dismiss

09:38:05  8    the count in its entirety.  In support, Camden cites

09:38:08  9    cases where courts have dismissed complaints against

09:38:11  10   non-appearing defendants when they were similarly

09:38:16  11   situated to other defendants who successfully moved to

09:38:18  12   dismiss a claim.

09:38:19  13        That's ECF No. 13 at 6.  These cases are an

09:38:25  14   outgrowth of the principle that courts may in

09:38:27  15   appropriate situations sua sponte dismiss claims.

09:38:34  16        See, for example, *Baker v. Director at U.S. Parole*

09:38:39  17   *Commission*, 916 Fd at 725, 727, a D.C. Circuit case from

          18   1990.

09:38:52  19        Regardless, I do find that dismissing Count 4

09:38:55  20   against Mancilla would be inappropriate.  Camden argues

09:38:58  21   only that since Mancilla does not fall within the

09:39:00  22   statutory definition of "employer," he cannot be held

09:39:07  23   individually liable under the DCHRA.

09:39:10  24        That's ECF No. 6-1 at 5.

09:39:14  25        All of Camden's arguments, however, ignore the 2022

09:39:19  1   amendment to the DCHRA.  Prior to this amendment, an

09:39:25  2   individual had to be an "employer," an "employment

09:39:31  3   agency," or a "labor organization" to be individually

09:39:34  4   liable under the DCHRA.

09:39:39  5        That's D.C. Code Section 2-1402.11(a)(1)(A), (2),

09:39:47  6   and (3).

09:39:48  7        But as mentioned previously, under the newly

09:39:51  8   adopted subsection (c-2), the DCHRA prohibits all

09:39:58  9   "sexual harassment."  And, again, it defines sexual

09:40:02  10  harassment as "any conduct of a sexual nature" "that

09:40:08  11  unreasonably alters an individual's terms, conditions,

09:40:11  12  or privileges of employment or has the purpose or effect

09:40:14  13  of creating an intimidating, hostile, or offensive work

09:40:19  14  environment."

09:40:22  15       Again, that's Section 2-1402.11(c-2)(2)(A) and

09:40:31  16  (B)(i).

09:40:34  17       By its terms, liability under this (c-2) provision

09:40:38  18  is not limited to employers.  The DCHRA also explicitly

09:40:44  19  notes that whenever any party to the conduct held a

09:40:49  20  position of formal -- sorry -- "whether any party to the

09:40:54  21  conduct held a position of formal authority over or

09:40:59  22  informal power relative to another party" "shall not be

09:41:07  23  determinative" in finding liability.

09:41:10  24       That is again Section 2-1402.11(c-2)(3) and(3)(E).

09:41:20  25       So Mancilla's lack of supervisor status cannot be

09:41:24  1   dispositive.  And again, Camden has not argued that the

09:41:29  2   alleged assault on Smith was not sufficient to create an

09:41:33  3   intimidating, hostile, or offensive work environment.

09:41:36  4       So I will deny this motion to dismiss -- the motion

09:41:41  5   to dismiss Count 4 as to Mancilla.

09:41:51  6       Count 5:  I will also deny Camden's motion to

09:41:55  7   dismiss Count 5.  In that count, Smith asserts a common

09:41:59  8   law cause of action for negligence against Camden.

09:42:02  9   Smith alleges that Camden's "Hug Life" policy

09:42:07  10  negligently "endangered" her and other "young women

09:42:13  11  because it subjected them to a culture of coworkers and

09:42:17  12  managers touching them."

09:42:20  13      That's the complaint at Paragraph 109.

09:42:23  14      Smith further alleges that Camden's decision to

09:42:25  15  impose that policy, plus its failure to take any steps

09:42:29  16  that would mitigate possible risks, constituted a

09:42:36  17  "breach of Camden's duty of care" to "protect its

09:42:40  18  workers from its own dangerous policy."

09:42:44  19      Smith finally asserts this breach caused the

09:42:47  20  assault against her since Mancilla "initiated the sexual

09:42:50  21  assault by using Camden's hugging policy."

09:42:55  22      That is the complaint at Paragraph 110.

09:43:04  23      Camden argues that I should dismiss this count

09:43:07  24  because the District of Columbia Worker's Compensation

09:43:11  25  Act, or WCA, bars common law claims based on workplace

09:43:17   1    sexual assaults.

09:43:18   2         ECF No. 6-1 at 6.

09:43:22   3         The WCA provides the "exclusive" remedy for "the

09:43:27   4    injury or death of an employee that occurs in the

09:43:31   5    District of Columbia if the employee performed work for

09:43:33   6    the employer, at the time of the injury or death, while

09:43:37   7    in the District of Columbia."

09:43:41   8         That's D.C. Code Sections 32-1503(a)(1) and

09:43:49   9    32-1504(a).

09:43:50  10         It further defines "injury" as "accidental injury

09:43:54  11    or death arising out of and in the course of

09:44:01  12    employment," including "an injury caused by the willful

09:44:04  13    act of third persons directed against an employee

09:44:07  14    because of his employment."

09:44:11  15         That is Section 32-1501(12).

09:44:18  16         The D.C. Court of Appeals has held that the WCA

09:44:22  17    bars tort suits so long as "there is a substantial

09:44:26  18    question as to whether an employee's injuries are

09:44:29  19    covered by an employment compensation statute."

09:44:35  20         That's *Harrington v. Moss*, 407 Atlantic 2d, 658,

09:44:44  21    661, a D.C. Court of Appeals case from 1979.

09:44:49  22         Accordingly, courts should dismiss such claims

09:44:53  23    "unless the injuries were clearly not compensable under

09:44:56  24    the statute."

09:45:03  25         Thus, the question is whether Camden has shown that

09:45:06  1    the WCA does not clearly exclude the injuries that

09:45:09  2    Camden's "Hug Life" policy allegedly caused Smith as

09:45:13  3    statutory "injuries," and I conclude that it has not.

09:45:21  4        In support of its position, Camden cites *Tatum V.*

09:45:24  5    *Hyatt Corp.*, 918 F. Supp. 5, a D.D.C. case from 1994,

09:45:32  6    for the proposition that "courts consistently have held

09:45:36  7    that" the WCA provides the exclusive remedy for common

09:45:40  8    law claims based on all workplace sexual assaults.

09:45:45  9        That's ECF No. 6-1 at 6.

09:45:48  10       But whatever persuasive value *Tatum* may have held

09:45:52  11   when it was decided 30 years ago, it has since been

09:45:56  12   abrogated by intervening D.C. Court of Appeals case

09:46:00  13   law.

09:46:00  14       In *Estate of Norwood v. National Credit Union*

09:46:05  15   *Administration*, for example, the Court of Appeals held

09:46:08  16   "as a matter of law that sexual harassment is not 'a

09:46:14  17   risk involved in or incidental to employment.'"

09:46:19  18       That's 665 Atlantic 2d, 621 at 634, D.C. Court of

09:46:27  19   Appeals case from 1995.

09:46:29  20       Accordingly, injuries "allegedly attributable to

09:46:33  21   sexual harassment are not statutory 'injuries'" covered

09:46:36  22   by the WCA -- same case at Page 633 -- and thus, tort

09:46:44  23   suits meant to remedy those injuries are not barred by

09:46:47  24   the WCA's exclusivity provision.

09:46:50  25       That's the same case at Pages 624 and 630.

09:46:57  1          So *Norwood* would seem to imply that Count 5, which

09:47:01  2    seeks to remedy injuries incurred from sexual harassment

09:47:04  3    that allegedly arose from Camden's purported "Hug Life"

09:47:08  4    policy, is not covered by the WCA's exclusivity

09:47:11  5    provision.

09:47:12  6          In response, Camden argues that this case is

09:47:15  7    distinguishable from *Norwood* because Smith's common law

09:47:19  8    claims "are not premised on the same facts as her

09:47:23  9    statutory sexual harassment claim."

09:47:27 10          ECF No. 13 at 7.

09:47:29 11          I disagree with that.  Smith's Count 2 DCHRA claim

09:47:34 12    and the Count 5 negligence claim are based on

09:47:39 13    fundamentally the same facts:  She alleges that Camden

09:47:43 14    imposed its "Hug Life" policy and, as a result of that

09:47:47 15    policy, Smith's privilege of working in a safe and

09:47:51 16    comfortable environment was "endangered."

09:47:59 17          That's Paragraphs 90, 91; 109, 110, and 111 of the

09:48:06 18    complaint.

09:48:06 19          Camden also argues that *Norwood* is distinguishable

09:48:12 20    since, unlike Mancilla, the harasser in that case was

09:48:15 21    the victim's supervisor.

09:48:17 22          And that's 665 Atlantic 2d at 625, and ECF No. 13

09:48:24 23    at 7 through 8.

09:48:26 24          But that is ultimately for these purposes beside

09:48:31 25    the point.  Under *Norwood*, it is the sexual nature of

09:48:36  1    the injury, not the supervisory status of the alleged

09:48:43  2    injurer that takes the claim outside the WCA's ambit.

09:48:48  3         Again, 665 Atlantic 2d at 633.

09:48:52  4         Similarly, the fact that Camden did not intend for

09:48:55  5    this conduct to occur is irrelevant for that purpose.

09:49:06  6         In its reply, Camden also largely relies on *Grillo*

09:49:12  7    *v. National Bank of Washington*, 540 Atlantic 2d, 743, a

09:49:16  8    D.C. case from 1988, to argue that Smith's tort claims

09:49:19  9    must go through the WCA.

09:49:23  10        See ECF No. 13 at 8 through 9.

09:49:27  11        But *Norwood* expressly holds that while *Grillo*

09:49:31  12   applies "in cases not premised on allegations of sexual

09:49:39  13   harassment," "*Grillo* does not necessarily control" when

09:49:43  14   cases are premised on sexual harassment.

09:49:47  15        That's 665 Atlantic 2d at 631 and 632.

09:49:54  16        Thus, Camden has not shown that the WCA does not

09:49:58  17   clearly exclude Smith's injuries from its coverage.  So

09:50:03  18   I will deny its motion to dismiss this count.

09:50:09  19        I note that Camden has argued only that injuries

09:50:12  20   arising from workplace sexual assault are

09:50:20  21   categorically -- I'm sorry.

09:50:21  22        I note that Camden has argued only that injuries

09:50:24  23   arising from workplace sexual assault are categorically

09:50:29  24   covered by the WCA.  That's ECF No. 6-1 at 6.

09:50:34  25        Camden does not argue that Smith's specific

09:50:37  1   injuries are covered by the WCA because she alleges that

09:50:41  2   her conditions of employment placed her in a "'zone of

09:50:47  3   special danger' which caused the injury."

09:50:50  4        *Tredway v. District of Columbia*, 403 A.2d, 732 at

09:50:56  5   736, a D.C. Court of Appeals case from 1979.

09:51:03  6        So I have not conferred any such argument.

09:51:07  7        Turning finally to Count 6, I will grant Camden's

09:51:12  8   motion to dismiss Count 6, which alleges a cause of

09:51:14  9   action for battery against Camden.  As discussed

09:51:18  10  previously regarding Count 3, Smith has not plausibly

09:51:23  11  alleged that Mancilla was acting within the scope of his

09:51:27  12  employment when he purportedly assaulted Smith since the

09:51:31  13  pleaded facts are insufficient to suggest that Mancilla

09:51:34  14  was acting to further Camden's interests in some way by

09:51:38  15  allegedly assaulting her.

09:51:41  16       Yet for an employer to be liable for the

09:51:43  17  intentional torts of an employee, the employee must act

09:51:48  18  at least "in part to serve his employer's interest."

09:51:53  19       That's *Hechinger Company v. Johnson*, 761 Atlantic

09:51:58  20  2d, 15 at 24, a D.C. Court of Appeals case from 2000.

09:52:04  21       So for those reasons, I will dismiss Count 6.

09:52:08  22       So summing all of that, for all these reasons, I

09:52:12  23  will enter an order granting in part and denying in part

09:52:16  24  the motion to dismiss, ECF No. 6.

09:52:20  25       I will grant the motion as to Count 1, Count 2,

09:52:26  1    Count 3, Count 4, as to Camden only, and Count 6.  And I
09:52:34  2    will deny the motion as to Count 4 as to Mancilla, and
09:52:39  3    Count 5.
09:52:44  4         Again, thank you all for making time to be present
09:52:52  5    for this oral ruling.  We'll have the defendant answer
09:52:58  6    according to the rules and proceed from there.
09:53:03  7         Any questions from the defendant?
09:53:07  8              MS. DAVIS:  No questions, Your Honor.
09:53:09  9              THE COURT:  Okay.  Any questions from the
09:53:11  10   plaintiff?
09:53:12  11             MR. BALDWIN:  No questions, Your Honor.
09:53:13  12             THE COURT:  All right.  Very well.  I'll look
09:53:15  13   forward to moving the case along further.
09:53:19  14        Everyone have a good Christmas.  And the parties
09:53:22  15   are dismissed.
09:53:24  16        (Court in recess, 9:53 a.m.)
          17
          18
          19
          20
          21
          22
          23
          24
          25

1

2                              CERTIFICATE

3

4          I, Chandra Kean, RMR, certify that the foregoing is

5     a correct transcription from the record of proceedings

6     in the above-titled matter.

7

8

9     _____         December 23, 2024
                                       _____
10         Chandra Kean, RMR                  DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25